MICHELINA. DOMENICIS *vs.* MORRIS FLEISHER & another.

Suffolk.   December 13, 1906. — May 14, 1907.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Landlord and Tenant.*

The daughter of the tenant of a tenement in a building, where the entries, the
stairways and certain other parts of the building remain in the control of
the landlord for the common use of all the tenants, can maintain an action
against such landlord for the suffering of an illness caused by foul water leak-
ing upon her as she slept from a pipe leading from a defective water closet on
the floor above, upon showing that the defendant maintained the water closet
for the use of all the tenants in the building and that two days before the
accident he had received notice of its defective condition.

Distinction pointed out by LORING, J. between the rights of a member of the
household of a tenant against the landlord and the absence of any such right
in case of the breach of an executory contract to let the premises.

TORT by a minor, by her father and next friend, for personal
injuries received by the plaintiff while occupying a room in the
tenement of her parents in a building on Salem Street in Boston
owned by the defendants.   Writ in the Municipal Court of the
City of Boston dated August 17, 1901.

On appeal the case was tried in the Superior Court before *Aiken,* C. J. It was agreed that the defendants at the time of the injury owned the building.

The plaintiff testified that at the time of the injury complained of she was asleep in a room in the building of the defendants; that this building was a dwelling house occupied by a number of different tenants each with their own tenement; that the defendant Ginsberg also lived in the house; that in the house, in a hallway directly over the plaintiff's bedroom and not connected with the tenement of plaintiff's parents, was a water closet; that this water closet was provided by the defendants for the use of all the tenants in the house, was under the control of the defendants and was used in common by all the tenants including Ginsberg and the occupants of the tenement rented by the plaintiff's parents; that the pipe from this water closet entered and went through the room in which the plaintiff slept; that on the night of the injury the plaintiff on going to bed noticed nothing unusual about the room in which she slept; that there was no leakage or dripping from the pipe; that some time later during that night she was awakened by the falling of plaster and found that a part of the plaster had fallen from the ceiling and that some of the contents of the pipe from the water closet had leaked into her room; that the room was filled with foul odor and that she thereby was made sick.

The mother of the plaintiff testified that two days before the accident the water closet was wet, that she wiped the floor and "observed in the pipe there was a little crack and the bad stuff was coming out of it," whereupon she notified the persons who had charge of the house for the defendants.

The Chief Justice ruled that on all the evidence the plaintiff could not recover, and ordered a verdict for the defendants. The plaintiff alleged exceptions.

The case was submitted on briefs.

*J. E. Crowley,* for the plaintiff.

*D. Stoneman & S. Hurwitz,* for the defendants.

LORING, J. It is settled that, in case of the lease of a tenement in a building where the entries and stairways or other parts of the building remain in the control of the land-

lord for the common use of tenants, the landlord is under some obligation to keep them in condition. *Looney* v. *McLean*, 129 Mass. 33. *Andrews* v. *Williamson*, 193 Mass. 92. *Miller* v. *Hancock*, [1893] 2 Q. B. 177. *Hargroves* v. *Hartopp*, [1905] 1 K. B. 472.

It also is settled that the measure of the landlord's obligation is to use due care to keep that portion of the premises remaining in his control for the use of the tenants in the same condition in which they appeared to be at the date of the demise. *Andrews* v. *Williamson*, 193 Mass. 92.

In the case at bar the jury were warranted in finding that the landlord was notified that the water closet was out of order two days before the accident, and that takes the case out of *Hutchinson* v. *Cummings*, 156 Mass. 329, *Cummings* v. *Ayer*, 188 Mass. 292.

The plaintiff in the case at bar for these reasons was entitled to go to the jury unless the fact that she was not the tenant but a daughter of the tenant makes a difference.

We are of opinion that it does not.

There are a number of cases in this Commonwealth in which a member of the tenant's family has been allowed to recover for a negligent act of the landlord. *Looney* v. *McLean*, 129 Mass. 33. *Shute* v. *Bills*, 191 Mass. 433. *Andrews* v. *Williamson*, 193 Mass. 92. See also in this connection *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357; *Moynihan* v. *Allyn*, 162 Mass. 270.; *Cummings* v. *Ayer*, 188 Mass. 292; *Dalton* v. *Gibson*, 192 Mass. 1. There are also cases where one who has come on the leased premises on business with the tenant has been held to be entitled to recover for negligence on the part of the landlord under circumstances under which the tenant would have been entitled to recover. *Wilcox* v. *Zane*, 167 Mass. 302. *O'Malley* v. *Twenty-Five Associates*, 170 Mass. 471. *Roche* v. *Sawyer*, 176 Mass. 71. *Jordan* v. *Sullivan*, 181 Mass. 348.

If the owner of a building enters into a contract to let his premises to another and breaks that contract, the only person who can sue him for the breach is the other party to the contract. A member of the family of the person who under the contract has a right to become a tenant has no remedy for

not making the lease, although he or she was to be an occupant of the premises under the lease.

But when the lease has been made and possession taken, a new relation comes into existence between the owner on the one hand as lessor; and the tenant as lessee, and that relation extends to all persons for whose occupation the lease was taken and who in fact occupy under the lease.

There is the same difference in case of a contract for transportation by a carrier and the relation which comes into existence when the transportation once has begun. If, for example, the head of a family should make a contract with a common carrier for the transportation of himself, his family and servants from one place to another, the carrier would not be liable to any one but the head of the family for refusing to enter upon the transportation. But even if that contract were under seal so that no one could sue on it but the head of the family, when the transportation once has begun the carrier comes under the relation of a carrier for hire; and he comes under this relation not only to the party to the covenant but to each person who is received by him (the carrier) as a passenger under that covenant; and if there is on his part a breach of the duty owed by a carrier to a passenger for hire, the carrier can be sued in tort by any one of those persons.

The entry must be

*Exceptions sustained.*